Rebecca L. Reed (Bar No. 275833)
E-mail:     rebecca.reed@procopio.com
Justin M. Fontaine (Bar No. 323357)
E-mail:     justin.fontaine@procopio.com
PROCOPIO, CORY, HARGREAVES
  & SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Proposed Intervenor-Defendant
CAMPO BAND OF DIEGUENO MISSION
INDIANS

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BACKCOUNTRY AGAINST DUMPS; DONNA TISDALE; and JOE E. TISDALE,<br><br>  Plaintiffs,<br><br>v.<br><br>UNITED STATES BUREAU OF INDIAN AFFAIRS; DARRYL LACOUNTE, in his official capacity as Director of the United States Bureau of Indian Affairs; AMY DUTSCHKE, in her official capacity as Regional Director of the Pacific Region of the United States Bureau of Indian Affairs; UNITED STATES DEPARTMENT OF THE INTERIOR; DAVID BERNHARDT, in his official capacity as Secretary of the Interior; and TARA SWEENEY, in her official capacity as Assistant Secretary of the Interior for Indian Affairs,<br><br>  Defendants. | Case No. 3:20-cv-02343-JLS-DEB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT CAMPO BAND OF DIEGUENO MISSION INDIANS' MOTION TO INTERVENE FOR A LIMITED PURPOSE**<br><br>Date.:    April 8, 2021<br>Time:    1:30 p.m.<br>Ctrm.:    4D<br>Judge:   Hon. Janis L. Sammartino<br><br>Complaint Filed:   July 8, 2020<br>Trial Date:             Not set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 5

II. STATEMENT OF FACTS ........................................................................ 6

III. ARGUMENT ............................................................................................ 9

    A. LEGAL STANDARDS ................................................................... 9

    B. THE TRIBE IS ENTITLED TO INTERVENE AS OF RIGHT ........... 10

        1. The Tribe's Motion is Timely ................................................ 10

        2. The Tribe Has a Significant Protectable Interest Related to the Subject of this Action ............................................................ 11

        3. A Decision in Plaintiffs' Favor Would Impair the Tribe's Ability to Protect its Interests ................................................ 12

        4. Existing Parties Will Not Adequately Represent the Tribe's Interests ................................................................................. 13

IV. CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Arakaki v. Cayentano*
   324 F.3d 1078 (9th Cir. 2003) .......................................................................... 13

*Citizens for Balanced Use v. Montana Wilderness Ass'n*
   647 F.3d 893 (9th Cir. 2011) .............................................................. 10, 12, 13

*Cook v. AVI Casino Enters., Inc.*
   548 F.3d 718 (9th Cir. 2008) .......................................................................... 14

*Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*
   932 F.3d 843 (9th Cir. 2019), *cert. denied*, 141 S.Ct. 161 (2020) ......... 10, 13, 14

*Donnelly v. Glickman*
   159 F.3d 405 (9th Cir. 1998) .......................................................................... 11

*Forest Conservation Council v. U.S. Forest Serv.*
   66 F.3d 1489 (9th Cir. 1995), *abrogated on other grounds by*
   *Wilderness Soc'y*, 630 F.3d 1173 ...................................................................... 11

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*
   422 F.3d 490 (7th Cir. 2005) .......................................................................... 10

*Nw. Forest Res. Council v. Glickman*
   82 F.3d 825 (9th Cir. 1996) ............................................................................ 10

*Sequoia ForestKeeper v. Watson*
   Case No. 1:16-CV-1865 AWI JLT, 2017 WL 4310257
   (E.D. Cal. Sept. 28, 2017) ................................................................................ 9

*Shermoen v. United States*
   982 F.2d 1312 (9th Cir. 1992) ........................................................................ 13

*Sierra Club v. U.S. Envtl. Prot. Agency*
   995 F.2d 1478 (9th Cir. 1993), *abrogated on other grounds*
   *by Wilderness Soc'y*, 630 F.3d 1173 ............................................................. 9, 11

*Sw. Ctr. for Biological Diversity v. Berg*
   268 F.3d 810 (9th Cir. 2011) .................................................................... 10, 11

*Trbovich v. United Mine Workers of Am.*
    404 U.S. 528 (1972) .................................................................................................. 13

*United States v. City of Los Angeles, Cal.*
    288 F.3d 391 (9th Cir. 2002) ................................................................................ 11, 12

*Wilderness Soc'y v. U.S. Forest Serv.*
    630 F.3d 1173 (9th Cir. 2011) ......................................................................... 9, 10, 11

**FEDERAL STATUTES, REGULATIONS, AND RULES**

25 C.F.R. pt. 162 .................................................................................................................. 8

85 Fed. Reg. 5462-01, 5463 (Jan. 30, 2020) ................................................................... 5, 6

25 U.S.C. § 415 .................................................................................................................... 8

42 U.S.C. §§ 4321-4347 ..................................................................................................... 8

FRCP Rule 12(b)(7) ......................................................................................... 5, 10, 14, 15

FRCP Rule 19 ............................................................................................................ passim

FRCP Rule 24 ...................................................................................................................... 9

FRCP Rule 24 .................................................................................................................... 13

FRCP Rule 24(a) ............................................................................................................... 13

FRCP 24(a)(2) ................................................................................................................. 6, 9

Proposed Intervenor-Defendant CAMPO BAND OF DIEGUENO MISSION INDIANS (the "Tribe") respectfully submits the following Memorandum of Points and Authorities in support of its motion to intervene for the limited purpose of filing a motion to dismiss this action under Rule 19 and Rule 12(b)(7) of the Federal Rules of Civil Procedure.

## I.
## INTRODUCTION

The Campo Band of Diegueno Mission Indians, otherwise known as the Campo Kumeyaay Nation, is a federally recognized tribe comprised of Kumeyaay people consisting of approximately 310 enrolled citizens ("Tribal Members"). (Declaration of Marcus Cuero ("Cuero Decl."), ¶ 5; *see also* 85 Fed. Reg. 5462-01, 5463 (Jan. 30, 2020).) The Tribe is governed by the General Council of the Tribe pursuant to the Constitution of the Campo Band of Mission Indians, which was adopted by the Tribe's members on July 13, 1975, and approved by the Bureau of Indian Affairs on January 20, 1976 (the "Constitution"). (Cuero Decl. at ¶ 6.)

In this litigation, Plaintiffs Backcountry Against Dumps and Donna and Joe Tisdale ("Plaintiffs") seek to prevent construction and operation of a $400 million renewable energy project (the "Project") that the Tribe has negotiated and approved to be built and operated on the Campo Indian Reservation (the "Reservation") by Intervenor-Defendant Terra-Gen Development Company, LLC ("Terra-Gen"). The Tribe and Terra-Gen entered into a lease for the Tribe's land to be used for the Project. The funds from the Lease and the Project will serve as the principal means of funding the Tribe's government operations. If Plaintiffs succeed in this litigation, the Project will be halted, threatening tens of millions of dollars in tribal revenue, jobs for Tribal Members, and the Tribe's sovereign right to control tribal resources and property.

Given the Tribe's material interest in the Lease and Project – the very subject matter of this litigation – the Tribe is indisputably so situated that disposing of this action in the Tribe's absence would impair or impede its ability to protect its interests

in the Lease and Project. As will also be explained below and in the Tribe's attached motion to dismiss pursuant to FRC 19(a)(1)(b)(i), the Tribe's interests are not, nor could they be adequately represented by the Federal Defendants or Terra-Gen in this action. As a consequence, the Tribe's intervention is readily warranted under FRCP 24(a)(2).

The Tribe submits herewith its motion to dismiss, which in the event the Court grants the instant intervention motion, the Tribe will file as a noticed motion to be heard subject to the Court's availability.

## II.

## STATEMENT OF FACTS

The Campo Band of Diegueno Mission Indians, otherwise known as the Campo Kumeyaay Nation, is a federally recognized tribe comprised of Kumeyaay people. *See* 85 Fed. Reg. 5462-01, 5463 (Jan. 30, 2020); Declaration of Marcus Cuero ("Cuero Decl.) ¶ 5. The Reservation was established in 1893 and currently comprises 16,512 acres of land located in eastern San Diego County, and is home to over 500 individuals, including Tribal Members and their families. (Curero Decl., ¶ 7.) The Tribe's economic and job opportunities are scarce. This is a consequence of the Reservation's remote location, which is fifty miles from any job center, absence of reliable public transportation and limited natural resources of non-arable land, wind and sun. (*See id.* at ¶¶ 8, 45.) These conditions have made it difficult for the Tribe to foster any self-generated economic development and hinders outbound job opportunities for Tribal Members. (*Id.* at ¶ 19.) Given the foregoing circumstances, the Reservation has a limited source of cash flow to support the community and tribal government operations.

The Tribe's geographic conditions, economic limitations and historical inequities and realities have negatively impacted the Kumeyaay people. (*Id.* at ¶ 20.) Very few Tribal Members pursue a higher education, which exacerbates the Tribe's economic difficulties. (*Id.*) Approximately 53% to 62% of the population living on the

Reservation lives below the poverty level (which significantly exceeds the average percentage of people living below the poverty level in San Diego County, which was approximately 15% in 2010). (*Id.* at ¶ 18.) This condition has not changed in the ensuing ten years. (*Id.*)

As a result of these circumstances, the Reservation suffers inadequate income, which in turn limits the Campo tribal government from providing all of the governmental and culturally-relevant social services it is responsible to facilitate as a self-governing tribe. (*Id.* at ¶ 14.) To date, the Tribe is currently unable to fund many of the programs and services authorized by the General Welfare Ordinance due to inadequate tribal government income. (*Id.*)

At issue in this action is the ground lease for Terra-Gen's $400 million renewable energy project, which will construct sixty wind turbines and associated infrastructure within a 2,200-acre corridor of the Reservation. (*See* Dkt. #42 at ¶¶ 2, 27.) Upon completion, the project will generate an estimated 252 megawatts of electrical power from renewable wind resources. (*Id.*)

The Tribe entered into a 25-year lease with Terra-Gen, which has already and will continue to generate significant economic benefits for the Tribe, including jobs for Tribal members and a consistent revenue source derived from payments and rents under the Lease. The Lease provides for various payments to the Tribe for the use of its land to maintain and operate the Project. (Curero Decl., ¶ 33.) The Tribe estimates that the Tribe will receive tens of millions of dollars in rents, royalties and other payments as a result of and over the life of the Project, including some that only accrue upon Project operation. (*Id.* at ¶ 38.) The revenue expected to be generated by the Project will become the primary source of funding for the Tribal government, and will allow the Tribe to fully fund its programs and services. (*Id.* at ¶ 37.)

Further, the Project will generate high-paying jobs for tribe members, including employing approximately 14 Tribal Members thus far. (*Id.* at ¶ 36.) Under the terms of the Lease, Tribe members will have preference in jobs related to the Project. (*Id.* at

¶ 40.)

The Lease also provides for an option to purchase the improvements upon the expiration of the 25-year lease term, thus providing continual long-term benefits to the Tribe and securing the Tribe's long-term commitment to using its land to generate renewable energy for current and future generations. (*Id.* at ¶ 42.)

In light of these benefits, on April 3, 2018, the Tribe's General Council adopted Resolution No. 04-03-2018-01, which approved the Lease with Terra-Gen for the Project. (*Id.* at ¶ 29.) Because the Project is located on Tribal land, the Lease was submitted to the Bureau of Indian Affairs ("BIA") for review in accordance with 25 U.S.C. § 415 and 25 C.F.R. Part 162. The BIA undertook an extensive environmental review and published a Draft Environmental Impact Statement ("EIS"), and thereafter a Final EIS, under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347. (*Id.* at ¶ 30.) The BIA also hosted public meetings and responded to public comments on the Draft EIS and Final EIS, and on April 7, 2020, Defendant U.S. Department of the Interior's Assistant Secretary for Indian Affairs signed the Record of Decision authorizing BIA approval of the Lease, and then approved the revised and restated Lease between Terra-Gen and the Tribe on May 4, 2020. (*Id.* at ¶ 31.)

The relief requested by Plaintiffs directly threatens BIA approval of the Lease that authorizes Terra-Gen to construct and operate the Project—thus resulting in a significant loss of income and jobs for the Tribe and interfering with the Tribe's control of its resources. Plaintiffs allege that the Project approvals violate the National Environmental Policy Act, the Migratory Bird Treaty Act, the Bald and the Golden Eagle Protection Act and ask this Court to order "BIA to withdraw its Project approvals" and Final EIS pending compliance with such federal law, and to enjoin BIA "from initiating or permitting any activities in furtherance of the Project that could result in any change or alteration of the physical environment unless and until the Defendants comply with" such requirements. (Dkt. #42 at ¶ 181.)

## III.

## ARGUMENT

### A.  LEGAL STANDARDS

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, the Tribe is entitled to intervention as of right for all purposes in this action. Rule 24 provides in pertinent part,

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Intervention as of right shall be granted whenever the elements of Rule 24(a)(2) are met, including in NEPA cases in defense of the government. *See Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011) ("When considering motions to intervene of right under Rule 24(a)(2), courts need no longer apply a categorical prohibition on intervention on the merits, or liability phase, of NEPA actions"). In determining whether a proposed intervenor meets the requirements of Rule 24(a)(2), the Ninth Circuit applies a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Id.* at 1177 (quoting *Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478, 1491 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173); *see also Sequoia ForestKeeper v. Watson*, Case No. 1:16-CV-1865 AWI JLT, 2017 WL 4310257, at *1-3 (E.D. Cal. Sept. 28, 2017) (applying four-part test and granting intervention in NEPA case).

"While an applicant seeking to intervene has the burden to show that these four

elements are met, the requirements are broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *see also Wilderness Soc'y*, 630 F.3d at 1179 (courts apply "[a] liberal policy in favor of intervention"). "In addition to mandating broad construction, . . . review is guided primarily by practical considerations, not technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2011) (internal quotations and citation omitted); *Citizens for Balanced Use*, 647 F.3d at 897.

Federal courts may grant a motion to intervene in order to allow sovereign government, including an Indian tribe, to appear for the limited purpose of filing a motion to dismiss under Rules 19 and 12(b)(7). *See, e.g.*, *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 850 (9th Cir. 2019), *cert. denied*, 141 S.Ct. 161 (2020) (recognizing district court granted tribe's motion to intervene for limited purpose of filing motion to dismiss under Rules 19 and 12(b)(7)); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005) (same).

### B. THE TRIBE IS ENTITLED TO INTERVENE AS OF RIGHT

#### 1. The Tribe's Motion is Timely

"[T]raditional features" of a timely motion to intervene are "[t]he motion to intervene was made at an early stage of the proceedings, the parties would not [suffer] prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or delay in the proceedings." *Citizens for Balanced Use*, 647 F.3d at 897 (motion to intervene filed three months after complaint was filed, and two weeks after Forest Service answer to complaint deemed timely); *see also Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (finding no prejudice where "the motion was filed before the district court had made any substantive rulings").

Here, the Tribe's Motion is timely. The Motion is filed early in the proceedings and before the Court has made any substantive rulings. At this stage, the action has recently been transferred to the Southern District of California and Plaintiffs recently

filed a First Amended and Supplemental Complaint on January 22, 2021..[1] Accordingly, intervention would not disrupt or delay the proceedings, and none of the parties would suffer any prejudice from the Tribe's intervention in this action for the limited purpose of filing a motion to dismiss.

### 2. The Tribe Has a Significant Protectable Interest Related to the Subject of this Action

When examining whether a proposed intervenor has a "significantly protectable" interest necessary for intervention, "the operative inquiry should be whether the 'interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" *Wilderness Soc'y*, 630 F.3d at 1180 (quoting *Sierra Club*, 995 F.2d at 1484). "An applicant demonstrates a 'significantly protectable interest' when 'the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173); *see also United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002) (noting that the "relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the applicant'") (quoting *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998)). The owner of real property that will be impacted by a lawsuit has a legally protected interest sufficient for intervention. *See Sierra Club*, 995 F.2d 1482-83.

The relief that Plaintiffs seek by way of this action will have direct, immediate and harmful effects upon the Tribe's legally protected interests—namely, the construction of renewable energy facilities on its Reservation under the Lease entered

---

[1] *See* Dkt. #42. Federal Defendants' answer or responsive pleading is not due until April 6, 2021. (*See* Dkt #45.) Terra-Gen filed a partial motion to dismiss the MBTA and BGEPA claims, which is currently pending before the court and scheduled for hearing on March 11, 2021. (*See* Dkt. # 46.)

into with Terra-Gen. Plaintiffs seek a declaration that "the Defendants' Project approvals . . . authorizing the Project and the Land Lease, and its March, 2020 FEIS, violate NEPA, the MBTA, the Eagle Act and the APA." (FAC, ¶ 181.) Further, Plaintiffs seek an order from the Court requiring "Defendants to withdraw their Project approvals and its March 2020 FEIS until such time as Defendants have complied with NEPA, the MBTA, the Eagle Act, the APA and their implementing regulations," and seeks preliminary and permanent injunctive relief "enjoin[ing] Defendants from initiating or permitting any activities in furtherance of the Project that could result in any change or alteration of the physical environment unless and until the Defendants comply with the requirements of NEPA, the MBTA, the Eagle Act, and their implementing regulations." (*Id.*)

If the Court grants the relief sought by Plaintiffs, the Tribe's legally protected interests in the Lease and its use of its sovereign Reservation will be directly impacted. Plaintiffs seek a drastic remedy which will harm the Tribe's economic and sovereign interests, its use of its property, and its control of its resources. As the beneficial owner of the property at issue, the Tribe undoubtedly has a legally protected interest related to the subject matter of this action.

### 3. A Decision in Plaintiffs' Favor Would Impair the Tribe's Ability to Protect its Interests

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting Fed. R. Civ. P. 24, Advisory Committee Notes (1966 Amendment)). A proposed intervenor need only show that the action potentially threatens its interests. *See id.* at 900 ("intervention of right does not require an absolute certainty that a party's interests will be impaired"); *see also City of Los Angeles*, 288 F.3d at 401.

As set forth above, the relief sought by Plaintiffs will cause significant harm to the Tribe's financial and sovereign interests, the use of its property, and the control of

its resources. As the beneficial owner of the Reservation on which the Project is to be built, the Tribe has a right to intervene in order to protect the interests that will be harmed should Plaintiffs succeed in this action.

### 4. Existing Parties Will Not Adequately Represent the Tribe's Interests

The final requirement of Rule 24 "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972); *see also Arakaki v. Cayentano*, 324 F.3d 1078, 1086 (9th Cir. 2003). When evaluating the adequacy of representation, the Ninth Circuit considers three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086).

The Ninth Circuit has determined that the interests of the federal government differ from those of a sovereign tribe such that the "Federal Defendants cannot be counted on to adequately represent [the tribe's] interests."[2] *Diné Citizens*, 932 F.3d at 855. The Ninth Circuit reasoned,

> Although Federal Defendants have an interest in defending their decisions, their overriding interest . . . must be in complying with environmental laws such as NEPA and the ESA. This interest differs in a meaningful sense from [the tribe's] sovereign interest in ensuring that the Mine and Power Plant continue to operate and provide profits to the [tribe]. If the district court were to hold that NEPA or the ESA required more analysis that would delay mining activities, or that one of the federal agencies' analyses underlying the approval was flawed, Federal Defendants' interest might diverge from that of [the tribe].

---

[2] The adequate representation question under Rule 19 is the same as the one set forth in Rule 24(a). *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992).

*Id.* Because the Tribe's interests potentially differ from those of the Federal Defendants, there is a potential that the Tribe's interests will not be adequately represented and intervention is therefore appropriate. The Tribe has a legally protected interest in the already-negotiated Lease which will provide significant revenue to the Tribe and will provide a source of high-paying jobs to the Tribe's members. And, it is axiomatic that the purely pecuniary interests of Terra-Gen differ greatly from the sovereign interests of the Tribe, and that Terra-Gen cannot adequately represent the Tribe's interests. *Diné Citizens*, 932 F.3d at 856. Further, none of the other defendants may avail themselves to the same sovereign immunity argument available to the Tribe and are therefore not capable or willing to make the same arguments as the Tribe proposes to raise in its motion to dismiss under Rules 19 and 12(b)(7). *See Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008) ("Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe").

      The interests of the Tribe are not adequately represented by the defendants in this action, and the Court should permit the Tribe leave to intervene in this action to file a motion to dismiss so that it may adequately protect its interests and its use of its Reservation.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IV.

# **CONCLUSION**

For the reasons stated above, the Campo Band of Mission Indians respectfully requests that the Court grant its motion to intervene in this action for the limited purpose of filing a motion to dismiss under Rules 19 and 12(b)(7) of the Federal Rules of Civil Procedure.

DATED: March 3, 2021

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: */s/Rebecca L. Reed*
Rebecca L. Reed
Justin M. Fontaine
Attorneys for Proposed Intervenor-Defendant CAMPO BAND OF DIEGUENO MISSION INDIANS